## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                    Case No. 17-40007-01-DDC

BRUCE MAYO NICHOLS, II (01),

      Defendant.

## MEMORANDUM AND ORDER

This matter comes before the court on defendant Bruce Mayo Nichols, II's Motion to Dismiss Count I of the Indictment (Doc. 19). In his motion, Mr. Nichols asserts that he never sustained a conviction punishable by more than one year in prison. So, he contends, he could not violate 18 U.S.C. § 922(g)(1)—a federal statute forbidding a convicted felon from possessing a firearm. *See* Doc. 1 at 1. Mr. Nichols thus asks the court to dismiss the Indictment. While the motion presents an intriguing and close question, the court concludes that the balance of authorities favors the government's side of the question. The court thus denies Mr. Nichols's Motion to Dismiss.

## I.    Background

On February 8, 2017, the grand jury returned a one-count Indictment (Doc. 1) against defendant Bruce Mayo Nichols, II. It charges that Mr. Nichols is a convicted felon who, on November 29, 2016, possessed a firearm in and affecting commerce, which had been shipped and transported in interstate or foreign commerce in violation of § 922(g)(1). Doc. 1 at 2. This charge relies on Mr. Nichols's 2013 conviction in Kansas state court. *Id.* at 1. More specifically, the Indictment asserts that the District Court of Shawnee County, Kansas convicted Mr. Nichols

of aggravated battery on January 24, 2013, in violation of Kan. Stat. Ann. § 21-5413(b).  Mr. Nichols's motion concedes this conviction, a product of an *Alford*[1] plea.  Based on the Kansas sentencing guidelines, this 2013 conviction carried a severity level of VII and Mr. Nichols had a category I criminal history.  On the Kansas Sentencing Grid for Nondrug Offenses,[2] reproduced below in Figure 1, Mr. Nichols's sentencing range was 11 to 13 months in prison with a presumptive disposition of a probation sentence.  On January 24, 2013, the Kansas court sentenced Mr. Nichols.  His sentence did not depart from the presumptive disposition and so he received 24 months' probation with an underlying 12-month term of imprisonment.

Almost four years later, on November 29, 2016, two officers in the Topeka Police Department stopped Mr. Nichols for an alleged traffic violation.  During that traffic stop, officers testified that they searched the vehicle Mr. Nichols was driving and found two firearms in it.

## II.     Analysis

Mr. Nichols asserts that he could not have violated 18 U.S.C. § 922(g)(1) because his January 24, 2013 conviction was not punishable by more than one year in prison.  He makes this assertion because the presumptive disposition of his sentence for that conviction was probation—and because he actually received a probation sentence.  To place this argument in context, the court begins by reviewing the sentencing procedure used by Kansas state courts in 2013.

---

[1]     *North Carolina v. Alford*, 400 U.S. 25 (1970).

[2]     *See* Kan. Stat. Ann. § 21-6804.  This grid and the Kansas statutes cited throughout Section II.A., below, were the ones in effect in 2013.  They are still in effect today.

### A.     Kansas State Court Sentencing in 2013[3]

In 2013, Kansas courts used two grids to sentence persons convicted of felonies: one grid for drug offenses and the other for nondrug offenses. Kan. Sentencing Comm'n, Kan. Sentencing Guidelines Desk Reference Manual (2013), *available at* www.sentencing.ks.gov, 24. The grid used in Mr. Nichols's 2013 sentencing was the one for nondrug offenses. Figure 1 reproduces that grid—tiny font-size and all—in its entirety.

### Figure 1



SENTENCING RANGE - NONDRUG OFFENSES

| Category → / Severity Level ↓ | A 3+ Person Felonies | B 2 Person Felonies | C 1 Person & 1 Nonperson Felonies | D 1 Person Felony | E 3+ Nonperson Felonies | F 2 Nonperson Felonies | G 1 Nonperson Felony | H 2+ Misdemeanors | I 1 Misdemeanor No Record |
|---|---|---|---|---|---|---|---|---|---|
| I | 653 620 592 | 618 586 554 | 285 272 258 | 267 253 240 | 246 234 221 | 226 214 203 | 203 195 184 | 186 176 166 | 165 155 147 |
| II | 493 467 442 | 460 438 416 | 216 205 194 | 200 190 181 | 184 174 165 | 168 160 152 | 154 146 138 | 138 131 123 | 123 117 109 |
| III | 247 233 221 | 228 216 206 | 107 102 96 | 100 94 89 | 92 88 82 | 85 79 74 | 77 72 68 | 71 66 61 | 61 59 55 |
| IV | 172 162 154 | 162 154 144 | 75 71 68 | 69 66 62 | 64 60 57 | 59 56 52 | 52 50 47 | 48 45 42 | 43 41 38 |
| V | 136 130 122 | 128 120 114 | 60 57 53 | 55 52 50 | 51 49 46 | 47 44 41 | 43 41 38 | (Presumptive Imprisonment) | (Presumptive Imprisonment) |
| VI | 46 43 40 | 41 39 37 | 38 36 34 | 36 34 32 | 32 30 28 | 29 27 25 | (Presumptive Imprisonment) | 21 20 19 | 19 18 17 |
| VII | 34 32 30 | 31 29 27 | 29 27 25 | 26 24 22 | 23 21 19 | 19 18 17 | 17 16 15 | 14 13 12 | 13 12 11 |
| VIII | 23 21 19 | 20 19 18 | 19 18 17 | 17 16 15 | 15 14 13 | 13 12 11 | 11 10 9 | 11 10 9 | 9 8 |
| IX | 17 16 15 | 15 14 13 | 13 12 11 | 13 12 11 | 11 10 9 | 10 9 8 | 9 8 7 | 8 7 6 | 7 6 |
| X | 13 12 11 | 12 11 10 | 11 10 9 | 10 9 | 9 8 7 | 8 7 6 | 7 6 5 | 7 6 5 | 7 6 5 |

LEGEND
Presumptive Probation
Presumptive Imprisonment

---

[3]    Chief Judge Robinson recently reviewed the Kansas state court sentencing structure in *United States v. Thomas*, No. 09-CR-20040-JAR, 2016 WL 4060192 (D. Kan. July 29, 2016). The Kansas sentencing statute at issue in *Thomas* was Kan. Stat. Ann. § 21-4704, the sentencing statute in effect in 2008 when the defendant in that case was sentenced in Kansas state court. *Id.* at *5. In 2010, the Kansas legislature repealed § 21-4704 and replaced it with Kan. Stat. Ann. § 21-6804. The latter statute, which applied to non-drug offenses, was in effect when Mr. Nichols was sentenced in 2013. While § 21-6804 differs slightly from its statutory predecessor, it uses similar language in many respects. So much of *Thomas*'s discussion describes Mr. Nichols's sentencing experience in 2013 as well.

This grid used two distinct axes: one expresses the conviction's severity level (vertical axis) and another one expresses the defendant's criminal history category (horizontal axis). *Id.* at 25. Kansas law assigned a severity level to almost all Kansas felony offenses. Likewise, all defendants fell into a criminal history category, a classification depending largely on the quantity and severity of a defendant's prior convictions. *See* Kan. Stat. Ann. § 21-6809. Determining Mr. Nichols's sentence under this grid required the sentencing judge to match his severity level to his criminal history category. When convicted on January 24, 2013, Mr. Nichols had a criminal history category I—the lowest level, found on the far right edge of the horizontal axis—and his 2013 conviction carried a severity level of VII on the vertical axis. The box located at the confluence of these data points was the I-VII grid box. *See* Figure 1.

Each box on this sentencing grid contained three numbers. They represented the presumed months of imprisonment for a defendant who had committed an offense of that severity level and criminal history. The higher number—the one in the top left corner of each box—was called the aggravated sentence. The lower number—the one in the bottom right corner—was called the mitigated sentence. And the middle number—in the center of each box—was the standard sentence. The grid box for Mr. Nichols's 2013 conviction prescribed an aggravated sentence level of 13 months, a mitigated sentence of 11 months, and a standard sentence of 12 months. And Kansas law allowed the judge who sentenced Mr. Nichols to choose any one of these three numbers. *See* Kan. Stat. Ann. § 21-6604(e)(1) (conferring on the sentencing court "discretion to sentence at any place within the sentencing range.").

The grid also used three types of shading to reflect the presumed disposition of the case: one identified Presumptive Probation sentences; one identified Presumptive Prison sentences; and a third that the grid referred to as "Border Boxes." When the severity level and criminal

history category of a defendant's conviction lined up in the Presumptive Imprisonment category, the presumptive sentence was a term of imprisonment. Likewise, when a defendant's sentence fell in the Presumptive Probation category, the presumed sentence was probation. And the sentence for a defendant who fell in a Border Box had no presumptive disposition. The grid box for Mr. Nichols's 2013 conviction carried a presumptive disposition of probation.

Kansas law authorized sentencing judges to depart from the sentence endorsed by the applicable grid box in two ways. First, a Kansas judge could use a durational departure to impose a longer or shorter sentence than the one recommended by the applicable box. Kan. Stat. Ann. § 21-6818(b). Second, a judge could impose a dispositional departure. This kind of departure did not change the length of the sentence; instead, it changed the recommended sentence from prison to probation—or vice-versa. *Id.* § 21-6803(g). Because the grid box that applied to Mr. Nichols's 2013 conviction provided for a Presumptive Probation sentence, sending Mr. Nichols to prison would have required the sentencing judge to apply a dispositional departure.

In 2013, Kansas judges could depart from the presumptive sentence only if specific circumstances existed. *See id.* § 21-6815(a) ("[T]he sentencing judge *shall* impose the presumptive sentence provided by the sentencing guidelines unless the judge finds substantial and compelling reasons to impose a departure sentence." (emphasis added)). A Kansas prosecutor who wanted the court to impose a harsher sentence than the presumptive one had to file a motion requesting a departure. *Id.* § 21-6817(a)(1). The statute governing such a motion required it to specify the "type of departure sought and the reasons and factors relied on" for the request. *Id.* And while the sentencing judge could signal an intent to depart even if neither party requested a departure, Kansas law likewise required the judge to announce the nature of the

putative departure and the reasons supporting it. *Id.* § 21-6817(a)(3). Finally, Kansas law required the sentencing judge to provide this notice early enough to give the parties "a fair opportunity to marshal and present . . . arguments for or against the proposed departure . . . ." *State v. Martinez*, 165 P.3d 1050, 1059 (Kan. Ct. App. 2007) (citation omitted).

Unless permitted explicitly by some other statute, a court could impose a departure sentence only if it found "substantial and compelling reasons" to do so. *Id.* To depart upward in favor of a harsher sentence, the court first had to find an "aggravating factor"—that is, a "substantial and compelling reason justifying an exceptional sentence . . . ." Kan. Stat. Ann. § 21-6803(a). Also, Kansas law required the court to specify this aggravating factor on the record, *id.*, and record evidence had to support the aggravating factor announced. *Id.* § 21-6815(d).

In Mr. Nichols's 2013 case, the prosecutor filed no motion requesting a departure and the court did not signal an intent to depart on its own motion. Predictably, Mr. Nichols's actual sentence did not depart from the presumptive sentence endorsed by the sentencing grid— probation. Specifically, the Kansas court sentenced Mr. Nichols to 24 months' probation with an underlying 12-month term of imprisonment should he violate the terms of his probation. Doc. 20-1 at 2–3.

**B.      Sentence of Imprisonment Exceeding One Year and Presumptive Probation**

Mr. Nichols's arguments contend that the maximum sentence he could have received was Presumptive Probation and, thus, his 2013 conviction cannot possibly supply the predicate felony required to support a conviction under § 922(g)(1). A 2008 decision by our court squarely rejects this thesis. *See United States v. Wattree*, 544 F. Supp. 2d 1262 (D. Kan. 2008).

In *Wattree*, the defendant moved to dismiss a charge under § 922(g)(1). 544 F. Supp. 2d at 1263. He argued—as Mr. Nichols argues here—that his 2000 Kansas conviction for burglary

was not a predicate felony because the applicable Kansas sentencing grid box called for Presumptive Probation. *Id.* at 1270. The *Wattree* defendant was situated at precisely the same level as Mr. Nichols: his criminal history scored as a Level I and the severity level for his offense of conviction was VII. *Id.* Judge Lungstrum's opinion in *Wattree* explained how the Kansas sentencing grid in effect in 2000 viewed the defendant. "The corresponding [grid] box on the sentencing table grid show[ed] an imprisonment range from eleven to thirteen months. The box also [was] located under the disposition line, indicating that there [was] a presumptive disposition of nonimprisonment, or in other words, presumptive probation." *Id.* (citing Kan. Stat. Ann. § 21-4704(a)).

Judge Lungstrum was not persuaded by the defendant's argument that his earlier conviction was not punishable by more than one year in prison and so Judge Lungstrum rejected his motion to dismiss. Judge Lungstrum's order explained that it was "the presumptive durational sentencing range and not the presumptive disposition [that] is determinative of whether a crime is punishable by more than a year" in prison. *Id.*

While not duty bound to reach the same conclusion as *Wattree*, the court views Judge Lungstrum's order as highly persuasive authority. Absent some intervening change in law, the court would follow it and overrule Mr. Nichols's motion. On close review, the court concludes that much has changed with federal precedent since *Wattree* was decided in 2008.[4] But as explained in the next three subsections, the court concludes that these changes do not call for a different result.

---

[4]    Although the Tenth Circuit's approach to determining if a conviction is a predicate felony changed in the intervening years—as discussed in detail, below—the approach used in *Wattree* is the same approach used by the Tenth Circuit now. At the time of *Wattree*'s analysis, a defendant-specific approach was used. *See United States v. Plakio*, 433 F.3d 692, 697 (10th Cir. 2005) (finding that defendant's conviction in Kansas state court was not for a crime punishable for a term exceeding one year because, based on the defendant's particular criminal history, he could not have received a term of imprisonment exceeding one year).

### 1.     *United States v. Brooks* **and Prior Precedent**

The Tenth Circuit's current approach to determine if a conviction is a predicate felony

under § 922(g)(1) is described in *United States v. Brooks*, 751 F.3d 1204 (10th Cir. 2014).

Before the *Brooks* panel began its analysis, it traced the shifts in federal precedent beginning

with a Tenth Circuit decision:

> In 2005 we decided *United States v. Plakio*, 433 F.3d 692 (10th Cir. 2005), which
> required us to determine whether a defendant's prior Kansas drug conviction
> qualified under U.S.S.G. § 2K2.1(a)(4)(A) as a "felony"; that is, whether the
> offense was "punishable by . . . imprisonment for a term exceeding one
> year." *Plakio*, 433 F.3d at 693–94 (quoting U.S.S.G. § 2K2.1 cmt. app. n. 1).
> Under Kansas's sentencing scheme, the defendant could have received eleven
> months in prison at most. *Id.* at 695. Reversing the district court, we held this
> conviction was not a felony "[b]ecause the [state] sentencing court could not have
> imposed a sentence greater than one year." *Id.* "Central to the *Plakio* decision
> was the premise that the maximum sentence must be calculated by focusing on
> the particular defendant," taking his criminal history category (under Kansas law)
> into account. [*United States v.*] *Hill*, 539 F.3d [1213, 1217 (10th Cir.
> 2008)] (citing *Plakio*, 433 F.3d at 697).

*Brooks*, 751 F.3d at 1206.[5]

Three years after *Plakio*, the Supreme Court issued *United States v. Rodriquez*, 553 U.S.

377 (2008). Following *Rodriquez*, the Tenth Circuit faced a similar issue in *United States v. Hill*.

The *Brooks* panel described *Hill*'s analysis in this fashion:

> Much like *Plakio*, *Hill* required us to determine whether a defendant's prior
> Kansas firearm conviction qualified as a "crime punishable by imprisonment for a

---

[5]     While *Brooks* considered the phrase "punishable by imprisonment for a term exceeding one year" in
the context of United States Sentencing Guideline § 4B1.2, its reasoning applies equally to the same
phrase in 18 U.S.C. § 922(g)(1). *See Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) ("[W]hen
Congress uses the same language in two statutes having similar purposes . . . it is appropriate to presume
that Congress intended that text to have the same meaning in both statutes."). In *United States v. Hill*, the
Tenth Circuit analyzed this phrase as it appears in 18 U.S.C. § 922(g)(1) while *Brooks* had considered the
Guidelines' use of the phrase. In so doing, the court recognized that the phrases are identical, and that the
canon of consistent usage applies to them. *See also United States v. Castleman*, 134 S. Ct. 1405, 1417
(2014) ("[T]he presumption of consistent usage [is] the rule of thumb that a term generally means the
same thing each time it is used. Although the presumption is most commonly applied to terms appearing
in the same enactment, it is equally relevant 'when Congress uses the same language in two statutes
having similar purposes.'" (quoting *Smith*, 544 U.S. at 233)).

term exceeding one year"—this time under 18 U.S.C. § 922(g)(1). *Hill*, 539 F.3d at 1214. Also like *Plakio*, under Kansas's sentencing scheme the defendant could have received no more than eleven months in prison. *Id.* Initially, under our *Plakio* approach, we held the defendant was not convicted of a "crime punishable by imprisonment for a term exceeding one year." *Id.* at 1213–14, 1218. After *Rodriquez* was released, however, we granted panel rehearing and vacated our prior opinion. *Id.* . . . Relying on *Rodriquez*, we overturned *Plakio* and held the proper focus in regard to the language in question is on the crime itself, not the individual defendant. *Id.* at 1221. . . . Thus, we held that when analyzing whether a defendant's prior crime was punishable by a certain amount of prison time under Kansas's scheme, the largest possible recidivist enhancement must be taken into account. *Id.* at 1221.

*Brooks*, 751 F.3d at 1206–07.

Just two years after *Hill*, the Supreme Court decided *Carachuri-Rosendo*, 560 U.S. 563 (2010). The *Brooks* panel recited the complex facts of *Carachuri-Rosendo* and summarized its analysis as follows:

[T]he defendant was a lawful permanent resident being removed from the United States because of two prior Texas drug misdemeanor convictions—one in 2004 and one in 2005. *Id.* at 566, 570–71. For the 2005 crime, which involved possession of a single Xanax tablet sans prescription, the defendant was sentenced to just ten days in jail. *Id.* In Texas, however, he could have been subject to a major sentencing enhancement because of the 2004 conviction—an enhancement that would have exposed him to more than one year in prison—but only if the prosecution proved the prior conviction. *Id.* at 570–71. The State did not elect to offer such proof. *Id.* at 571. Regardless, the Federal Government in *Carachuri-Rosendo* contended the defendant was not eligible for cancellation of removal or waiver because the 2005 offense qualified as an "aggravated felony" under the Immigration and Nationality Act (INA), a determination that ultimately hinged on whether the crime allowed for a "maximum term of imprisonment" of "more than one year." *Id.* at 566–67 (quoting 8 U.S.C. § 1229b(a)(3) and 18 U.S.C. § 3559(a)). The Government theorized that, "had Carachuri-Rosendo been prosecuted in federal court instead of state court [for the 2005 offense], he *could have been* prosecuted as a felon and received a 2–year sentence based on the . . . [2004] offense." *Id.* at 570 (emphasis in original).

In its decision, the Supreme Court first expressed wariness of the Government's argument because "the English language tells us that most aggravated felonies are punishable by sentences far longer than 10 days. . . ." *Id.* at 575. The Supreme Court then rejected the Government's "hypothetical approach" because it: (1) ignored the INA's text, which "indicates that we are to look at the conviction itself. . . not to what might or could have been charged"; (2) would punish a defendant for recidivism without providing him notice or opportunity to

contest said recidivism and would "denigrate the independent judgment of state prosecutors" who chose not to prove recidivism; (3) depends on a misreading of *Lopez v. Gonzales*, 549 U.S. 47 (2006), which did not go so far as to permit the reliance on a "hypothetical to a hypothetical"; (4) was inconsistent with common  federal court practice, whereby the defendant "would *not,* in actuality, have faced any felony charge"; and (5) failed to construe an ambiguity in an immigration-related criminal statute in the noncitizen's favor. *Id.* at 575–81. In conclusion, the Supreme Court stated:  "The prosecutor in Carachuri–Rosendo's [Texas] case declined to charge him as a recidivist.  He has, therefore, not been convicted of a felony punishable [by more than one year in prison] under the Controlled Substances Act." *Id.* at 582.

*Brooks*, 751 F.3d at 1207–08.

When *Carachuri-Rosendo* was decided, certiorari petitions were pending before the

Supreme Court in two related cases:  *United States v. Haltiwanger*[6] and *United States v.*

*Simmons*.[7]  The Supreme Court vacated the judgments in both cases and remanded them, in turn,

to the Eighth and Fourth Circuits "for further consideration in light of

*Carachuri–Rosendo* . . . ."  *Haltiwanger*, 562 U.S. at 802; *Simmons*, 561 U.S. at 1001 (2010).

The *Brooks* panel summarized the results of those cases in its analysis:

The initial case comes from the Eighth Circuit and bears a striking resemblance to our situation.  In *Haltiwanger*, the district court found a defendant's prior drug tax stamp conviction under 21 U.S.C.  841(b)(1) was a felony even though—under Kansas law, again—he could only have received seven months in jail.  *See United States v. Haltiwanger*, No. CR07-4037[-MWB], 2009 WL 454978, at *5 (N.D. Iowa Feb. 23, 2009) (unpublished).  The Eighth Circuit, prior to *Carachuri–Rosendo,* agreed.  *See United States v. Haltiwanger*, 356 F. App'x 918 (8th Cir. 2009) (per curiam) (unpublished). . . . On remand, "[u]pon careful review of *Carachuri-Rosendo,* including the Court's clarification and reiteration of its holding in *Rodriquez*," the Eighth Circuit reversed course:  "[W]here a maximum term of imprisonment of more than one year is directly tied to recidivism, *Carachuri-Rosendo* and *Rodriquez* require that an actual recidivist finding—rather than the mere possibility of a recidivist finding—must be part of a particular defendant's record of conviction for the conviction to qualify as a felony." *Haltiwanger*, 637 F.3d at 883–84. Because Haltiwanger's record of conviction did not include recidivism sufficient to expose him to more than one year in prison, "the hypothetical possibility that some recidivist defendants could

---

[6]    562 U.S. 802 (2010).

[7]    561 U.S. 1001 (2010).

have faced a sentence of more than one year is not enough to qualify Haltiwanger's conviction as a felony under 21 U.S.C. § 841(b)(1)." *Id.* at 884. Judge Beam dissented, writing only: "I believe that our judgment in this case is not affected by *Carachuri-Rosendo.*" *Id.*

Several months after the Eighth Circuit's about-face in *Haltiwanger*, an *en banc* Fourth Circuit panel confronted the same issue. There, the district court had originally classified a defendant's prior North Carolina drug conviction as a felony under 21 U.S.C. § 841(b)(1) even though he could have received at most eight months community service. *Simmons,* 649 F.3d at 239–41.[8] On appeal, prior to *Carachuri-Rosendo,* the Fourth Circuit affirmed. *See United States v. Simmons*, 340 F. App'x 141 (4th Cir. 2009) (unpublished). . . . On remand, the same panel concluded *Carachuri-Rosendo* did not implicate its prior analysis. *See United States v. Simmons,* 635 F.3d 140 (4th Cir. 2011). After *en banc* rehearing, however, the Fourth Circuit also reversed course. According to an eight-judge majority, the Fourth Circuit precedent holding similarly to *Hill—United States v. Harp*, 406 F.3d 242 (4th Cir. 2005)—was no longer good law under *Carachuri-Rosendo. See Simmons*, 649 F.3d at 239–50. Explicitly tracking *Haltiwanger*, the Fourth Circuit held that "'where a maximum term of imprisonment . . . is directly tied to recidivism,' the 'actual recidivist finding . . . must be part of a particular defendant's record of conviction for the conviction to qualify as a felony.'" *Id.* at 244 (quoting *Haltiwanger*, 637 F.3d at 884).

*Brooks*, 751 F.3d at 1211–12 (footnote in original).

Applying this binding and persuasive authority in *Brooks*, the Tenth Circuit considered whether the defendant had committed enough qualifying felonies to qualify as a "career offender" under the Federal Sentencing Guidelines. *Id.* at 1205. The dispositive conviction was a conviction by a Kansas state court. The district court had applied the "worst-hypothetical-recidivist" approach from *Hill* to conclude that the operative offense was punishable by more than one year in prison. *Id.* The Circuit concluded that *Carachuri-Rosendo* required the opposite result.

It held, "[I]n determining whether a state offense was punishable by a certain amount of imprisonment, the maximum amount of prison time a *particular* defendant could have received

---

[8]   Like Kansas, the North Carolina "sentencing structure ties a particular defendant's criminal history to the maximum term of imprisonment." *Simmons*, 649 F.3d at 244 (quoting *Haltiwanger*, 637 F.3d at 884).

controls, rather than the amount of time the worst imaginable recidivist could have received."

*Brooks*, 751 F.3d at 1213 (emphasis in original).

### 2. *United States v. Romero-Leon*: Confirming *Brooks*'s Holding

One year later, the Tenth Circuit confirmed *Brooks*'s holding in *United States v. Romero-Leon*, 622 F. App'x 712 (10th Cir. 2015).  There, the defendant argued that his three New Mexico state court convictions did not qualify as predicate convictions under the Armed Career Criminal Act ("ACCA") because the longest sentence he could have received for any of them was nine years—one year shy of the 10-year sentence required for a conviction to qualify as an ACCA predicate offense.  *Id.* at 715–16.  The government responded that New Mexico could have sentenced the defendant to twelve years if it had found an aggravating factor existed.  And so, the government reasoned, all three convictions qualified as ACCA predicate convictions.  *Id.* at 716–17.  The district court agreed with the government and sentenced the defendant under the ACCA.  *Id.* at 713.

The Tenth Circuit reversed.  It began by restating the rule from *Brooks*:  When "determining whether a state offense was punishable by a certain amount of imprisonment, the maximum amount of time a *particular* defendant could have received controls."  *Id.* at 715 (quoting *Brooks*, 751 F.3d at 1213) (internal quotations omitted) (emphasis in original).  After analyzing New Mexico's sentencing laws, the Circuit concluded, "New Mexico judges . . . were *not* imbued with unfettered discretion to enhance a defendant's basic sentence," but "[i]instead, the prosecution was apparently required to file a pleading giving [defendant] notice of potential aggravating factors."  *Id.* at 718 (citations omitted) (emphasis in original).  Because the prosecution never filed such a notice, the defendant was never subject to a punishment exceeding

10 years.  This meant, the court concluded, that the convictions "should not have triggered enhancement under ACCA."  *Id.*

### 3.    *United States v. Thomas*:  Our Court's Latest Application of Kansas State Court Convictions in a § 922(g)(1) case

In 2016, following *Brooks* and *Romero-Leon*, our court again considered Kansas state court convictions in the context of a felon-in-possession charge under § 922(g)(1).  *Thomas*, 2016 WL 4060192.  In *Thomas*, the defendant moved under 28 U.S.C. § 2255 to vacate his conviction.  2016 WL 4060192, at *1.  He contended that he received ineffective assistance of counsel because his defense counsel failed to argue that his prior convictions in Kansas state court were not felonies and thus precluded his conviction for violating 18 U.S.C. § 922(g)(1).  *Id.* at *1–2.  *Thomas* summarized the precedent outlined in *Brooks*, and then explained the sentencing structure used by Kansas state courts and presumptive probation sentences, in general.  *Id.* at *5–6.  In conclusion, *Thomas* noted:

> It does not appear that any court in this Circuit has held that a presumptive sentence of probation means that the crime is punishable by only probation and not imprisonment.  One court in this District has held the opposite—that the maximum sentence a defendant faced for a prior conviction included prison time, even though it fell into the presumptive probation range— although that decision was rendered before *Carachuri-Rosendo* and its progeny.[9]  The Court also notes that the defendants' Kansas sentences in *Haltiwanger* and *Brooks* would likely have fallen into the presumptive probation section of the grid.[10]  Neither argued

---

[9]    "*United States v. Wattree*, 544 F. Supp. 2d 1262, 1272 (D. Kan. 2008)."  *Id.* at *6 n.77.

[10]   Haltiwanger was convicted in Kansas of failure to affix a drug tax stamp.  At sentencing for that conviction, his criminal history category was found to be I and the [offense] was classified as a level 10 felony.  The longest prison sentence he could receive was seven months, and his sentence fell into the presumptive probation section of the sentencing grid.  *Haltiwanger*, 637 F.3d at 882.  Brooks was convicted in Kansas of fleeing and eluding, and the court said that he was subject to a sentence of no more than 7 months imprisonment for that offense, putting him in the presumptive probation section of the grid.  *Brooks*, 751 F.3d at 1208, Appendix.

*Id.* at *6 n.78.

> that probation was their maximum possible sentence because even if they had received prison sentences they would not have exceeded twelve months, so such an argument was unnecessary.

*Id.* at *6 (footnotes in original).

*Thomas*'s analysis of Presumptive Probation did not continue beyond this observation because it only had to decide whether the defendant was denied effective assistance of counsel—and not whether a presumptive sentence of probation meant that the defendant's crime was punishable only by probation and not imprisonment.[11]

### C.    Analysis of Mr. Nichols's Motion

Mr. Nichols reads the Supreme Court's decision in *Carachuri-Rosendo*, our Circuit's ensuing decisions in *Brooks* and *Romero-Leon*, and decisions by other Circuits—principally *Haltiwanger* and *Simmons*—to mean that his 2013 conviction cannot qualify as a predicate felony under § 922(g)(1).  The government's view is just the opposite.  It contends that these decisions do not affect the vitality of *Wattree* and *Thomas*.  While Mr. Nichols's arguments are not without appeal, they do not, in the end, persuade the court to displace *Wattree*.

At bottom, Mr. Nichols argues that the Presumptive Probation sentence recommended by the Kansas sentencing grid that controlled his 2013 sentence—unless the prosecutor or sentencing judge invoked the procedural steps necessary to permit a dispositional departure.  *See* Kan. Stat. Ann. §§ 21-6803(a), 21-6815(d).  And nothing in his record of conviction suggests that the prosecutor or judge took those steps, so, Mr. Nichols reasons, he never faced a prison sentence of any kind—much less one exceeding 12 months.

---

[11]    Following *Brooks*, our court considered that same phrase in the context of U.S.S.G. § 4131.2(a) in *United States v. Wetzel-Sanders*, No. 04-40156-SAC, 2014 WL 5502407 (D. Kan. Oct. 30, 2014).  On appeal, the Tenth Circuit determined that both the district court and the Tenth Circuit lacked jurisdiction so the Circuit vacated the district court's order and dismissed the appeal.  *United States v. Wetzel-Sanders*, 805 F.3d 1266, 1268–69 (10th Cir. 2015), *cert. denied,* 136 S. Ct. 1836 (2016).

14

But this argument disregards *Wattree* and, to a lesser extent, *Thomas*. *Wattree* considered a defendant situated in exactly the same grid box as Mr. Nichols. So, like Mr. Nichols, the sentence for *Wattree*'s defendant was Presumptive Probation. But *Wattree* explicitly rejected the idea that the defendant's presumptive sentence of probation controlled the analysis. Instead, it endorsed the opposite conclusion, holding that "the presumptive durational sentencing range and not the presumptive disposition is determinative of whether [a defendant's] crime is punishable by more than a year" in prison. 544 F. Supp. 2d at 1263. *Wattree*'s defendant—like Mr. Nichols—faced a durational sentencing range of 11 to 13 months. So *Watree* concluded that the defendant faced a sentence greater than one year and thus could violate § 922(g)(1) if he possessed a gun. The court reaches the same conclusion about Mr. Nichols's 2013 conviction.

Mr. Nichols's arguments point out that the judge who sentenced him in 2013 could not have sent him to prison. Doing so, he says, required the prosecutor or the judge to invoke procedural safeguards that neither one of them ever invoked. So, Mr. Nichols argues, the Kansas judge lacked the discretion to sentence him to prison. This is where his arguments have some appeal. Both *Carachuri-Rosendo* and *Romero-Leon* focused on the importance of procedural safeguards, explaining that a later court may not simply pretend that procedural safeguards were invoked when they were not. *See Brooks*, 751 F.3d at 1207 (explaining that in *Carachuri-Rosendo*, the Supreme Court rejected a "hypothetical" approach because it "would punish a defendant for recidivism without providing him notice or opportunity to contest said recidivism and would 'denigrate the independent judgment of state prosecutors' who chose not to prove recidivism[.]" (quoting *Carachuri-Rosendo*, 560 U.S. at 565)); *Romero-Leon*, 622 F. App'x at 718 (noting that "New Mexico judges . . . were *not* imbued with unfettered discretion to enhance a defendant's basic sentence," but "[i]nstead, the prosecution was apparently required to file a

pleading giving [defendant] notice of potential aggravating factors." (emphasis in original)). But in each, the uninvoked procedural safeguards applied to sentencing factors that could have been used to enhance the duration of a prison sentence—and not the disposition of the sentence. To say it simply, the court finds no basis to extend the reach of *Carachuri-Rosendo* or *Brooks*. To the contrary, sound reasons exist to conclude that *Wattree* is consistent with those later decisions.

For one thing, *Wattree* conducted a defendant-specific analysis. This is squarely in line with *Brooks* and *Romero-Leon*'s application of *Carachuri-Rosendo*'s mandate. *Brooks*, 751 F.3d at 1213 ("[I]n determining whether a state offense was punishable by a certain amount of imprisonment, the maximum amount of prison time a *particular* defendant could have received controls . . . ."); *Romero-Leon*, 622 F. App'x at 715 (focusing on "the maximum amount of prison time a *particular* defendant could have received" (quoting *Brooks*, 751 F.3d at 1213)). And nothing in these cases (or the Eighth and Fourth Circuit cases, for that matter) requires the court to focus on the presumptive disposition. Indeed, the opposite is true. Each opinion focuses on the maximum term of imprisonment the defendant faced. Equally important, the Circuit decisions reviewing a Kansas state conviction—*Haltiwanger* and *Brooks*—did not consider the presumptive disposition to decide the issue.[12]

The government should not take the court's ruling here to mean that it agrees with all its arguments. For instance, the government argues that Mr. Nichols could have had his probation revoked. This argument reasons that in Kansas, an offender sentenced to probation must abide by numerous conditions, some of which are mandatory. *See* Kan. Stat. Ann. § 21-6607(c) (listing mandatory conditions of probation); *id*. § 21-6607(b) (listing discretionary conditions of

---

[12]    The court acknowledges the observation from *Thomas* that the defendants in those two cases did not have to make arguments about the presumptive disposition because "even if they had received prison sentences they would not have exceeded twelve months." *Thomas*, 2016 WL 4060192, at *6.

probation).  If an offender violates any of the conditions of his probation, the state court may revoke the probation sentence and impose the prison sentence.  *See State v. Gumfory*, 135 P.3d 1191, 1193 (Kan. 2006) ("To sustain an order revoking probation on the ground that a probationer has committed a violation of the conditions of probation, commission of the violation must be established by a preponderance of the evidence.  Once there has been evidence of a violation of the conditions on which probation was granted, the decision to revoke probation rests in the sound discretion of the district court." (citation omitted)).  Thus, *if* the state court had selected 13 months as the underlying sentence, Mr. Nichols's crime could be punished by 13 months' imprisonment *if* he violated his probationary conditions.  So, the government argues, Mr. Nichols's crime was punishable by imprisonment for a term exceeding one year.

The flaw in this approach is that Mr. Nichols's probation never was revoked.  The record contains no facts suggesting that Mr. Nichols violated any of his probation conditions or otherwise was in jeopardy of having his probation revoked, making the government's argument on this point purely a hypothetical one.  So, to embrace this argument, the court would have to assume that Mr. Nichols violated his probation conditions often (or severely) enough that the state court would have revoked his probation.  The primary shortcoming of the government's argument is simple enough:  Nothing in the record from Mr. Nichols's 2013 case suggests a basis to assume that he violated his probation.  This weakness reveals the government's theory for what it is—a resort to the "worst-hypothetical-recidivist" approach explicitly rejected in *Carachuri-Rosendo*.

Rather than this argument, the continued vitality of *Wattree* leads the court to its result.  Applying *Wattree*'s holding, the court finds that the maximum term of imprisonment Mr. Nichols could have received in 2013 was 13 months.  Thus, Mr. Nichols's 2013 Kansas state

17

conviction is a predicate felony under § 922(g)(1).  For that reason, the court denies Mr. Nichols's Motion to Dismiss.

III.    **Conclusion**

In sum, the court concludes that Mr. Nichols's January 24, 2013 conviction for aggravated battery in Kansas was punishable by imprisonment for a term exceeding one year. Thus, that conviction is capable of supporting a conviction under 18 U.S.C. § 922(g)(1).  And the court denies Mr. Nichols's Motion to Dismiss for that reason.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Nichols's Motion to Dismiss Count I of the Indictment (Doc. 19) is denied.

**IT IS SO ORDERED.**

**Dated this 16th day of January, 2018, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
